# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

May 7, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**TOMMY JACKSON,**
**Claimant Below, Petitioner**

**vs.)    No. 13-0460** (BOR Appeal No. 2047669)
(Claim No. 2011039356)

**FAYETTE COUNTY COMMISSION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Tommy Jackson, by Gregory S. Prudich, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Fayette County Commission, by Lisa Warner Hunter, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated April 1, 2013, in which the Board affirmed a September 17, 2012, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's June 20, 2011, decision to reject the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon a material misstatement or mischaracterization of the evidentiary record. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for memorandum decision rather than an opinion.

Mr. Jackson worked for Fayette County Commission as a G/S technician for approximately six years. During that time Mr. Jackson worked in the Fayette County Commission's office building. The building was comprised of three separate floors. The bottom floor was fully underground and had been flooded several times in the past. The building's water problems, accompanied by visible mold and illness amongst workers, persuaded the workers to request a mold study be performed on the premises. On March 18, 2010, Research Environmental and Industrial Consultants (hereinafter "REIC") inspected the premises for mold. REIC found four different types of mold in the air. However, three of the different types were

1

found outside in similar levels. The final spore, Alternaria was only found inside. Despite only finding Alternaria inside, the REIC opined that the Alternaria must have come from outdoors because no conditions for indoor growth were observed in the vicinity. REIC noted that Alternaria can only grow in conditions that are constantly moist. Karen Hultman, M.D., and the Asthma and Allergy Center both noted Mr. Jackson's complaints about the building, in which he worked. While not commenting on whether the building was the cause of his symptoms, the Asthma and Allergy Center diagnosed him with asthma and allergic rhinitis. Alan Ducatman, M.D., who examined Mr. Jackson several times, determined in his report dated March 14, 2011, that Mr. Jackson's asthma and allergic rhinitis was developed through his exposure at work. Dr. Ducatman, after examining Mr. Jackson, wrote a letter to the Fayette County Commission stating that he could not be exposed to any more mold at work and requesting that he be moved from the basement to a location away from the mold. The Fayette County Commission heeded this request, and Dr. Ducatman noted improvement in Mr. Jackson's condition. Dr. Ducatman noted the history of the building and that symptoms from mold in humans is typically caused by an exposure to an indoor not outdoor growth. Dr. Ducatman also testified by deposition that it was more likely than not that Mr. Jackson received his conditions from being exposed to the building. Dr. Ducatman noted that the consistent testimony of Mr. Jackson's co-workers markedly increases the plausibility that the exposure from his workplace caused the illness. Mr. Stanley filed for workers' compensation benefits and his claim was denied. Mr. Stanley protested. Mr. Stanley was also evaluated by George Zaldivar, M.D. Based upon REIC's report, Dr. Zaldivar opined that Mr. Jackson's asthma and allergic rhinitis were developed outside of work.

The Office of Judges determined that Mr. Stanley did not develop asthma and allergic rhinitis in the course of and resulting from his employment. The Office of Judges disregarded the testimony of Dr. Ducatman and instead relied on REIC's report and Dr. Zaldivar's opinion. The testimony of Mr. Jackson and his co-workers establishes that the building in which he worked had extensive mold issues. The building that Mr. Jackson worked in was described by Mr. Jackson's co-workers Cynthia Renick, Bob Blackburn, Nancy Carr, Robin Brown, and Steve Fox as smelling of must and mold. They noted it was damp and had poor air circulation. Mr. Jackson's co-workers also noted that they seemed to be sick more often and for longer periods of time while they were in the Fayette County Commission's building. All the co-workers testified about their sinus problems while in the building and that the symptoms would subside when outside of the building. Mr. Fox testified that he has had six to eight chest infections per year while he worked in the Fayette County Commission building. Mr. Fox also noticed that his symptoms would dissipate when not exposed to the building. Sometime after the REIC inspection, which found no mold issues, several dehumidifiers had to be placed in the building to remove water. According to Mr. Blackburn, the dehumidifiers removed so much water at times, they had to be emptied on a daily basis. Fayette County Commission has also admitted a history of flooding in the building and that corrective measures had to be taken due to visible mold. The corrective measures included the removal of the carpet and installation of linoleum flooring to prevent the accumulation of water. The reliability of the REIC report is further called into question by the testimony of Mr. Jackson's co-worker. Nancy Carr testified that she witnessed clean-up-crews bleaching the premises the night before the inspection. The Office of Judges also ignored the medical opinion of Dr. Ducatman. The medical evidence demonstrates that Mr. Jackson is entitled to a finding of compensability. Mr. Jackson was otherwise healthy, without

2

any breathing problems, asthma, or allergies, until after he began working at Fayette County Commission. Karen Hultman, M.D., and the Asthma and Allergy Center both noted Mr. Jackson's complaints about the building, in which he worked. While not commenting on whether the building was the cause of his symptoms, the Asthma and Allergy Center diagnosed him with asthma and allergic rhinitis. Dr. Ducatman concluded that Mr. Jackson's asthma and allergic rhinitis was caused by the conditions at work. Dr. Ducatman also found that asthma is typically related to an indoor instead of an outdoor exposure to mold, which increased the likelihood that Mr. Jackson's exposure to mold at Fayette County Commission's building caused his asthma and allergic rhinitis. Dr. Ducatman's conclusion is further supported by the fact that he noted a reduction in the severity of Mr. Jackson's symptoms when his workspace was moved from the basement to an area away from the mold. Despite the overwhelming evidence of water and mold problems, the conclusion that Alternaria was present, Dr. Zaldivar's acknowledgement that Alternaria causes asthma, the strong testimony of several of the co-workers, and the admissions of Fayette County Commission, the Office of Judges came to the conclusion that Mr. Jackson's symptoms could not be related to his employment. The Board of Review adopted the finding of the Office of Judges and affirmed its Order.

The Office of Judges' conclusion that Mr. Jackson did not develop asthma and allergic rhinitis in the course of his employment is clearly wrong in view of the reliable, probative and substantial evidence on the whole record. The Board of Review's affirmance of the Office of Judges decision was based upon a mischaracterization of the evidence of record. The Office of Judges ignored the inconsistency of the REIC inspection with the remainder of the evidence of record. There was ample evidence of water and mold problems admitted by Fayette County Commission. There was also overwhelmingly consistent testimony of the various co-workers concerning health-related problems caused from being in the building as well as smell of mold. Likewise, Alternaria was present in the building and Dr. Zaldivar acknowledged that Alternaria causes asthma. Dr. Ducatman noticed an improvement in Mr. Jackson's condition when moved to an area with less mold, coupled with Dr. Ducatman's opinion that the mold in Fayette County Commission's building cased his condition, demonstrates that Fayette County Commission's building caused Mr. Jackson's conditions. To deny Mr. Jackson's claim, under the basis that there was not enough mold at the workspace to cause his condition is simply a mischaracterization of the evidence of record. The co-workers' consistent testimony clearly demonstrates that there was a water intrusion problem. Furthermore their testimony demonstrates that the conditions to form mold such as poor air circulation and moisture were present in the building. Finally, many of the co-workers' asserted that they have seen visible mold in the building.

For the foregoing reasons, we find that the decision of the Board of Review is based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is reversed and remanded with instructions to issue a decision holding Mr. Jackson's claim compensable for asthma and allergic rhinitis.

Reversed and Remanded.

**ISSUED:**   **May 7, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II